UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH PASQUINI, | ) | CIVIL ACTION NO. 4:20-CV-243 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| ANDREW SAUL, | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

## I.   INTRODUCTION

Plaintiff Elizabeth Pasquini, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision is VACATED.

Page 1 of 23

II.     BACKGROUND & PROCEDURAL HISTORY

On March 31, 2017, and March 1, 2017, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 28.   In these applications, Plaintiff alleged she became disabled as of December 27, 2013, when she was 28 years old, due to the following conditions: bipolar disorder, anxiety, necrobiosis lipoidica diabeticorum, and manic disorder. (Admin. Tr. 195). Plaintiff alleges that the combination of these conditions affects her ability to squat, kneel, remember/memorize, complete tasks, concentrate, understand, follow instructions, and get along with others. (Admin. Tr. 217). Plaintiff has at least a high school education. (Admin. Tr. 38).

On May 22, 2017, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 28). On May 25, 2017, Plaintiff requested an administrative hearing. *Id*.

On August 1, 2018, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Richard Zack (the "ALJ"). (Admin. Tr. 68). On October 24, 2018, the ALJ Issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 40). On December 14, 2018, Plaintiff

requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 168-170).

On December 19, 2019, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1).

On February 11, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1, ¶¶ 14-15). As relief, Plaintiff requests that the Court reverse the ALJ's decision and award benefits, or in the alternative, remand this case for a new administrative hearing. (Doc. 1, p. 3).

On April 17, 2020, the Commissioner filed an Answer. (Doc. 6). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 6, ¶ 6). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 7).

Plaintiff's Brief (Doc. 16), the Commissioner's Brief (Doc. 19), and Plaintiff's Reply (Doc. 22) have been filed.  This matter is now ripe for decision.

III.   STANDARDS OF REVIEW

A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

## B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C.

§ 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[1] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age,

---

[1] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on October 24, 2018.

education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 2 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a); *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work

experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   DISCUSSION

Plaintiff raises the following issues in her statement of errors:

(1)   Plaintiff's skin disorder meets or equals a listing;

(2)   Plaintiff's skin disorder causes work-preclusive limitations at step five of the sequential evaluation process.

Page 8 of 23

(Doc. 16, p. 2). However, after reviewing Plaintiff's brief, it appears that she raises several issues not encompassed by her statement of errors. I construe Plaintiff's brief as raising the following arguments:

(1)    The ALJ's decision that Plaintiff does not meet Listing 8.04 is not supported by substantial evidence.

(2)    The ALJ did not properly evaluate Dr. Saporito's opinion.

(3)    The ALJ's determination that Plaintiff's skin condition got worse on March 1, 2018 is not supported by substantial evidence.

A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his October 2018 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through September 30, 2015. (Admin. Tr. 30). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between December 27, 2013 (Plaintiff's alleged onset date) and September 30, 2015 (the date the ALJ decision was issued) ("the relevant period"). *Id*. At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: necrobiosis lipoidica diabeticorum (skin rash/lesions), bipolar disorder, anxiety disorder, and borderline personality disorder. *Id*. Also at step two, the ALJ found that the medical evidence

of record established the existence of the following medically determinable non-severe impairments: hypertension, hypothyroidism, vitamin D deficiency, sinusitis, temporomandibular joint dysfunction, obesity, and diabetes mellitus. (Admin. Tr. 30-31). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 31).

Between steps three and four, the ALJ assessed Plaintiff's RFC.

The ALJ found that from December 27, 2013 through May 1, 2018, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except that:

> the claimant could lift and carry twenty pounds occasionally and ten pounds frequently. The claimant could sit, stand or walk for six out of eight hours with normal breaks and lunch periods. The claimant could perform occasional climbing, balancing, stooping, kneeling, crouching and crawling. The claimant would have full use of the upper extremities for reaching, handling, fingering and feeling of objects on a continuous basis. The claimant could not perform a highly detailed or complex occupation. The claimant would have difficulty with working involving having to deal face-to-face with the public on a frequent or continuous basis. The claimant could understand, remember and carry out simple instructions and make simple work-related decisions. The claimant can have occasional contact with coworkers, supervisors and the public and respond appropriately. The claimant could respond to such a work environment and changes that take place in a simple, routine, repetitive type job. The claimant would have difficulty working as a team member

with constant interacting with other coworkers and supervisor during an entire workday.

(Admin. Tr. 33).

The ALJ found that, from May 1, 2018 through October 24, 2018, Plaintiff

retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a)

and 20 C.F.R. § 416.967(a) except that:

> the claimant could lift ten pounds occasionally and two to three pounds frequently. The claimant could sit for six hours with normal breaks and lunch periods, but standing and walking would be limited to two hours in each category. The claimant could perform occasional kneeling and crawling and frequent climbing, balancing, stooping and crouching. The claimant could climb ladders or scaffolds or be exposed to excessive vibrations that could impact contact with her lower extremities. The claimant would have full use of the upper extremities for reaching, handling, fingering and feeling of objects on a continuous basis. The claimant could not perform a highly detained or complex occupation. The claimant would have difficulty with working involving having to deal face-to-face with the public on a frequent or continuous basis. The claimant could understand, remember and carry out simple instructions and make simple work-related decisions. The claimant can have occasional contact with coworkers, supervisors and the public and respond appropriately. The claimant could respond to such a work environment and changes that take place in a simple, routine, repetitive type job. The claimant would have difficulty working as a team member with constant interacting with other coworkers and supervisor during an entire workday.

(Admin. Tr. 34).

At step four, the ALJ found that Plaintiff had no past relevant work. (Admin.

Tr. 38). At step five, the ALJ found that, considering Plaintiff's age, education and

work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 38). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing. In support of his conclusion that Plaintiff could engage in other work between December 27, 2013 through May 1, 2018, the ALJ cited the following three representative occupations: cleaner (DOT #323.687-014); mail sorter (DOT #209.687-026); and stock clerk (DOT #299.667-014).  (Admin. Tr. 39). In support of his conclusion that Plaintiff could engage in other work between May 1, 2018 through October 24, 2018, the ALJ cited the following three representative occupations: document preparer (DOT #249.587-018);  assembler  of  small  products  (DOT  #739.687-030); clerical/addresser (DOT #209.587-010). *Id.*

B.   WHETHER THE ALJ PROPERLY EVALUATED DR. SAPORITO'S MEDICAL OPINION[2]

Plaintiff's podiatrist, Daniel J. Saporito, DPM ("Dr. Saporito") wrote the following letter on Plaintiff's behalf:

---

[2] Plaintiff did not include this issue in her statement of errors, but did argue that Dr. Saporito's Letter was improperly analyzed by the ALJ in two portions of her brief. First, during her listing argument, Plaintiff asserted that the opinion was improperly discounted because the ALJ misapplied the durational requirement used for skin disorders. Second, Plaintiff argued that the limitations set forth in Dr. Saporito's opinion (relating to Plaintiff staying off her feet) should have been credited. Because Plaintiff relies on Dr. Saporito's letter as credible evidence to

> This is to certify that Elizabeth Finnegan did have an appointment in our office on 8-6-2018. Due to multiple ulcerations of her bilateral legs, patient needs to stay off her feet and elevate as much as possible on a daily basis. These directives are necessary to promote healing of the wounds. If you need further information, please do no hesitate to contact our office. Thank you.

(Admin. Tr. 603).

As noted above, the ALJ gave "little weight" to this opinion. In doing so, he explained:

> The claimant had an office visit on August 6, 2018 and Dr. Saporito provided a letter stating that the claimant needs to stay off her feet and elevate as much as possible to promote healing of her wounds (Exhibits C12F and C13F). However, this statement is insufficient evidence to conclude that this flare will not heal or that it will continue at a heightened level requiring the claimant to stay off her feet and elevate her legs for twelve consecutive months, given the fact that the claimant reported feeling as if she was getting better and the record showing no signs of emergency treatment for infection or worsening symptoms after starting more intensive treatment. Nevertheless, in deference to the claimant, the undersigned finds that this flare would reduce the claimant to the sedentary residual functional capacity as stated above as of May 2018, the period where the wounds were found not be to responding to treatment. To the extent this statement is considered an opinion, it is given partial weight. Some weight is given to the limitations in the context of acute treatment for wounds. However, the weight of the opinion is lessened because it does not adequately address the durational requirement or provide a full functional assessment of the claimant's residual functional abilities.

(Admin. Tr. 36).

---

support several of her other arguments, I will address the issue of whether the ALJ properly *discredited* the opinion first.

The Commissioner's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); 20 C.F.R. § 416.927(a)(1). Regardless of its source, the ALJ is required to consider every medical opinion received together with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b); 20 C.F.R. § 416.927(b).

In deciding what weight to accord competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).[3] Under some circumstances, the medical opinion of a "treating source" may even be entitled to controlling weight. 20 C.F.R. § 404.1527(a)(2) (defining treating source); 20 C.F.R. § 416.927(a)(2) (same as 20 C.F.R. § 404.1527(a)(2)); 20 C.F.R. § 404.1527(c)(2) (explaining what is required for a source's opinion to be controlling); 20 C.F.R. § 416.927(c)(2) (same as 20 C.F.R. §404.1527(c)(2)).

---

[3] 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927 apply to applications filed before March 27, 2017. 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c apply to applications filed on or after March 27, 2017. In this case, Plaintiff filed a Title XVI application on March 1, 2017, and a Title II application on March 31, 2017. The ALJ did not discuss the regulatory change, and applied 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927 to the evaluation of the medical opinion evidence submitted as to both applications. Plaintiff has raised no objection to this. Furthermore, the application of the new regulation would not change my ruling that remand is required in this case, because it is the explanation provided that is defective.

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. §404.1527(c); 20 C.F.R. § 416.927(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."); 20 C.F.R. § 416.927(c)(2) (same as 20 C.F.R. § 404.1527(c)(2)). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong

reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir 1999) (*quoting Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Plaintiff argues that the ALJ erred by discounting Dr. Saporito's opinion because the ALJ's assessment that the opinion "does not adequately address the durational requirement" is inconsistent with 20 C.F.R. Part 404, Subpart P, Appendix 1 § 8.00G.

Section 8.00G of 20 C.F.R Part 404, Subpart P Appendix 1 provides:

How do we determine if your skin disorder(s) will continue at a disabling level of severity in order to meet the duration requirement? For all of these skin disorder listings except 8.07 and 8.08, we will find that your impairment meets the duration requirement if your skin disorder results in extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed. By persist, we mean that the longitudinal clinical record shows that, with few exceptions, your lesions have been at the level of severity specified in the listing. For 8.07A, we will presume that you meet the duration requirement. For 8.07B and 8.08, we will consider all of the relevant medical and other information in your case record to determine whether your skin disorder meets the duration requirement.

Plaintiff argues:

<u>The ALJ Imposed a 12-Month Durational Requirement Not Required by the Listing.</u>

In rejecting Dr. Saporito's opinion as to the necessity for Ms. Pasquini to "stay off of her feet and elevate as much as possible on a daily basis," the ALJ writes that "this statement is insufficient evidence to conclude that this flare will not heal or that it will continued [sic] at a heightened level requiring the claimant to stay off her feet and elevate her legs for twelve-consecutive [sic] months,...." "Nevertheless, in deference to the

claimant, the undersigned finds that this flare would reduce the claimant to the sedentary residual functional capacity...as of May 2018.." (R. 36)(emphasis added). The ALJ errs in imposing a requirement that Plaintiff's lesions had to last 12 consecutive months in order to meet the requirements of a Listing. To be sure, Plaintiff has argued, supra, that the evidence of record clearly establishes that Ms. Pasquini's "extensive ulcerating lesions" have lasted well over 12 months. Nonetheless, Plaintiff disputes the ALJ's assertion that there is a 12-month durational requirement embodies in Listing 8.04. Section 8.00G of the preamble to Listing 8.04 reads as follows:

> For all of these skin disorder listings except 8.07 and 8.08, <u>we will find that your impairment meets the duration requirement if your skin disorder results in extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed</u>. By persist, we mean that the longitudinal clinical record shows that, with few exceptions, your lesions have been at the level of severity specified in the listing.

20 CFR Part 404 Subpt P App. 1, Section 8.00G. (emphasis added). The plain language of the regulation clarifies that the duration requirement is deemed to be met "if your skin disorder results in extensive skin lesions that persist for at least 3 months despite continuing treatment." *Id.* Even more notable, to be found to have a skin disorder that has "persisted" for at least three months, a claimant need only show that the lesions were of listing-level severity "with few exceptions." *Id.* Thus, a Listing is still met even if a claimant has short periods without "extensive lesions." The ALJ's imposition of a phantom 12-month durational requirement runs contrary to the regulations and renders invalid his entire analysis of whether Listing 8.04 is met or equaled. For this reason alone, this case must be remanded.

(Doc. 16, pp. 14-15) (emphasis in original).

In response, the Commissioner argues:

The ALJ considered Dr. Saporito's opinion, but he did not adopt it. Rather, he assigned it partial weight (Tr. 36). In support of his

conclusion, the ALJ noted that the doctor's statement was insufficient evidence to conclude that Plaintiff's symptom flare would not heal or that it would continue at a heightened level requiring the claimant to stay off her feet and elevate her legs for 12 consecutive months (Tr. 36). Rather, Dr. Saporito's opinion was relevant only during a period of acute treatment for Plaintiff's wounds. As the ALJ correctly observed, after Plaintiff began heightened treatment in May 2018, Plaintiff reported she was following treatment recommendations, she felt she was getting better, she did not show any signs of infection, and she did not need emergency treatment (Tr. 36, 408-10). *See Dillard v. Comm'r of Soc. Sec.*, No. 2:17-319, 2018 WL 4501088, at *11 (D.S.C. June 19, 2018) *adopted by* 2018 WL 4489687 (D.S.C. Sept. 19, 2018) (finding that the ALJ reasonably discounted a temporary limitation).

Significantly, the ALJ agreed that Plaintiff experienced a heightened level of impairment in May 2018 that may have required her to spend less time on her feet, resulting in his decision to reduce Plaintiff's capacity from light work to sedentary work for that timeframe (Tr. 36). Because the ALJ supplied good reasons for not adopting Dr. Saporito's opinion in total, the Court should reject Plaintiff's argument that her condition seriously limited her.

(Doc. 19, pp. 21-23).

The "duration requirement" originates from the statutory definition of disability itself, which requires that, to be disabling, an impairment "be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The symptoms of skin disorders, however, may wax and wane, making it difficult to determine if or when they meet this requirement. Section 8.00G of the Listing of Impairments provides that a skin disorder, like the one at issue here, meets this

requirement "if your skin disorder results in extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Part 404, Subpar P, Appendix 1 § 8.00G.

Section 404.1527(c)(3) and 416.927(c)(3) of Title 20 of the Code of Federal Regulations provide that:

> The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources.

The ALJ essentially discounted this opinion because Dr. Saporito did not explain how long (days, weeks, months, or years) Plaintiff would be restricted to staying off her feet and elevating her legs "as much as possible." However, there are significant problems with the ALJ's analysis on this issue.

First, in discounting Dr. Saporito's opinion, the ALJ applies a durational period that is inconsistent with the Commissioner's regulations. As noted above, a skin disorder is presumed to meet the statutory durational requirement if the lesions

at issue persist for at least 3 months despite treatment. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 8.00G.

Second, the application of the durational requirement to the weighing of the opinion is confusing. At step three when he evaluated Plaintiff's skin disorder under Listing 8.04, the ALJ found that Plaintiff's skin lesions were not "extensive" (i.e., they did not interfere with Plaintiff's ability to ambulate effectively).[4] Because the ALJ concluded that Plaintiff's skin lesions were not extensive, he did not reach the issue of whether Plaintiff's skin lesions met the durational requirement; making the

---

[4] In order to meet listing 8.04, a claimant must show that she or she has "[c]hronic infections of the skin or mucous membranes, with extensive fungating or extensive ulcerating skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 8.04. "Extensive skin lesions" are "those that involve multiple body sites or critical body areas, and result in a very serious limitation." 20 C.F.R. § 404, Subpart P, Appendix 1 § 8.00C1. Examples of extensive skin lesions include, but are not limited to:

a.   Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

b.   Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

c.   Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

*Id.*

durational requirement irrelevant to his listing analysis. However, to discount Dr. Saporito's medical opinion, the ALJ cited to Dr. Saporito's failure to specify for what period of time (days, weeks, months, years) Plaintiff would need to remain off her feet to discount the strongest evidence that addressed whether Plaintiff's lesions were "extensive."

Third, although it is helpful, nothing in the relevant statute, regulations, or caselaw requires that a medical opinion address the duration a limitation could be expected to persist.

Although the Commissioner argues that it is permissible to discount a medical opinion in situations where the opinion addresses only a "temporary" limitation, that is not the case here. Dr. Saporito's opinion itself is silent as to the duration of the limitation, and the ALJ did not discount the opinion because he believed the limitation to be "temporary." He discounted because it did not address duration.[5] This is a subtle but important distinction. In this case, Dr. Saporito's opinion clearly addresses the extensiveness/degree of limitation that results from Plaintiff's skin lesions during a flare. It does not address how long a flare (or that particular flare)

---

[5] The ALJ did note that "the claimant reported feeling as if she was getting better and the record showing no signs of emergency treatment for infection or worsening symptoms after starting more intensive treatment." (Admin. Tr. 36). However he did not cite any support for this conclusion in the record.

could be expected to last. On these facts, I find that it is not proper under the regulations to discount an opinion for what it *doesn't* say, while ignoring what it *does* when the administrative record includes treatment notes which may, or may not, provide insight as to the duration of a "flare" of Plaintiff's skin disorder.

Remand is required for further evaluation of Dr. Saporito's medical opinion.

### C.   PLAINTIFF'S REMAINING ARGUMENTS

Plaintiff raises the following additional arguments in her Brief:

(1)   The ALJ's decision that Plaintiff does not meet Listing 8.04 is not supported by substantial evidence; and,

(2)   The ALJ's determination that Plaintiff's skin condition got worse on March 1, 2018 is not supported by substantial evidence.

Because I have found a clear basis for remand based on the ALJ's failure to properly explain or support his decision to discount Dr. Saporito's opinion, I need not address these remaining arguments. To the extent any further error exists, it may be addressed on remand.

## V.   CONCLUSION

I find that Plaintiff's request for a new administrative hearing be GRANTED as follows:

(1) The final decision of the Commissioner should be VACATED.

(2) This case should be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3) Final judgment should be issued in favor of Elizabeth Pasquini.

(4) An appropriate order shall issue.

Date: January 20, 2021                    BY THE COURT

                                          *s/William I. Arbuckle*
                                          William I. Arbuckle
                                          U.S. Magistrate Judge